**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BERNICE O'BRYANT,

Plaintiff,

v.

CITY OF DETROIT, a Municipal Corporation, and LAMAR WILLIAMS, in his individual and official capacity,

Defendants.

Case No.: 21-10321

Hon. George Caram Steeh

Magistrate Judge: Hon. Kimberly G. Altman

---

Joel B. Sklar (P38338)
Law Offices of Joel Sklar
Attorney for Plaintiff
500 Griswold, Suite 2450
Detroit, MI 48226
313-963-4529 / 313-963-9310 Fax
joel@joelbsklarlaw.com

Todd Russell Perkins (P55623)
Stephen J. Chacko (P78210)
PERKINS LAW GROUP, PLLC
Attorneys for Plaintiff
615 Griswold, Suite 400
Detroit, MI 48226
313-964-1702

Robyn J. Brooks (P47787)
City of Detroit Law Department
Attorney for Defendant City of Detroit
2 Woodward, Suite 500
Detroit, MI 48226
313-237-3049 / 313-224-5505 Fax
broor@detroitmi.gov

Monica N. Hunt (P68838)
Bryan W. Langepfeffer (P80471)
The Allen Law Group, P.C.
Attorneys for Defendant Lamar Williams
3011 West Grand Blvd., Suite 2500
Detroit, MI 48202
313-871-5500 / 313-871-0517 Fax
mhunt@alglawpc.com
blangepfeffer@alglawpc.com

---

**DEFENDANT LAMAR WILLIAMS'S MOTION TO COMPEL RESPONSE TO INTERROGATORY NO. 22, RESPONSES TO SECOND SET OF DISCOVERY AND REQUEST FOR ATTORNEY FEES**

Defendant Lamar Williams ("Defendant Williams"), through undersigned counsel, pursuant to Fed. R. Civ. P. 37, moves this Court for an order compelling Plaintiff Bernice O'Bryant ("Plaintiff") to respond to an interrogatory propounded by Defendant (Interrogatory No. 22) in his first set of discovery to Plaintiff, and provide documents responsive to three requests for production of documents (Requests for Production No. 3-5) in his second set of discovery to Plaintiff. In support of his motion, Defendant Williams contemporaneously submits the attached accompanying Brief in Support, which sets forth the relevant facts, procedural history, law and argument.

WHEREFORE, Defendant respectfully requests that this Honorable Court enter an Order pursuant to Fed. R. Civ. P. 37 compelling Plaintiff to respond to Defendant Williams's Interrogatory No. 22 in his first set of discovery to Plaintiff, and provide documents responsive to Requests for Production No. 3-5 in Defendant Williams's second set of discovery to Plaintiff within five (5) days of the Order, or suffer such sanction as the Court may impose, and award Defendant Williams costs and attorney fees associate with the filing of this Motion.

**CERTIFICATE OF CONCURRENCE**
**PURSUANT TO LOCAL RULE 7.1**

Undersigned counsel sought concurrence regarding this Motion from counsel for the parties on February 10, 2022. There were multiple conferences between attorneys for Defendant Williams and the Plaintiff in which the movant explained the nature of the motion and its legal basis and requested but did not obtain concurrence in the relief sought.

Respectfully Submitted,

**The Allen Law Group, PC**

*/s/Bryan W. Langepfeffer*
Bryan W. Langepfeffer
3011 West Grand Blvd., Suite 2500
Detroit, MI 48202
313-871-5500 / 313-871-0517 Fax
blangepfeffer@alglawpc.com

Dated: February 24, 2022

# CERTIFICATE OF SERVICE

The undersigned certifies that a copy of ***Defendant Lamar Williams's Motion to Compel Response to Interrogatory No. 22, Responses to Second Set of Discovery and Request for Attorney Fees, and the accompanying Brief in Support*** were served upon all attorneys of record by electronic notification by the ECF system on February 24, 2022.

The statement above is true to the best of my knowledge, information and belief.

*/s/ Bryan W. Langepfeffer*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

BERNICE O'BRYANT,

Plaintiff,

v.

CITY OF DETROIT, a Municipal Corporation, and LAMAR WILLIAMS, in his individual and official capacity,

Defendants.

Case No.: 21-10321

Hon. George Caram Steeh

Magistrate Judge: Hon. Kimberly G. Altman

**BRIEF IN SUPPORT OF DEFENDANT LAMAR WILLIAMS'S MOTION TO COMPEL RESPONSE TO INTERROGATORY NO. 22, RESPONSES TO SECOND SET OF DISCOVERY AND REQUEST FOR ATTORNEY FEES**

# TABLE OF CONTENTS

STATEMENT OF ISSUES PRESENTED ………………………………………......7

INDEX OF AUTHORITIES …………………………………………………8

INTRODUCTION ……………………………………………………………9

STATEMENT OF FACTS …………………………………………………10

LEGAL ARGUMENT ……………………………………………………...16

A. The Court Should Compel Plaintiff to Respond to Defendant Williams's Interrogatory No. 22……………………………………16

B. The Court Should Compel Plaintiff to Provide Documents in Response to Defendant Williams's Requests for Production No. 3-5 in his Second Set of Discovery…….……………………...……..21

C. Conclusion………………………………………………………..23

## STATEMENT OF ISSUES PRESENTED

1. Is Defendant Lamar Williams ("Defendant Williams") entitled to a response from Plaintiff to his Interrogatory No. 22 seeking information regarding the ownership of contraband and other items related to the contraband found at her residence at the time of her arrest?

2. Is Defendant Williams entitled to documents responsive to his Requests for Production No. 3-5 in his second set of discovery served on the Plaintiff?

# INDEX OF AUTHORITIES

## Cases

*Frontczak v City of Detroit*, No. 18-13781, 2021 U.S. Dist. LEXIS 185207; 2021 WL 440332 (E.D. Mich. Sept. 28, 2021).[1]

*Nucorp, Inc v Does 1-24*, ___F Supp 3d___; 2012 U.S. Dist. LEXIS 187547 (E.D. Mich. Oct. 18, 2012).

## Rules

Fed. R. Civ. P. 26(b)(1)

Fed. R. Civ. P. 34

Fed. R. Civ. P. 34(b)(2)(A)

Fed. R. Civ. P. 37

Fed. R. Civ. P. 37(a)(3)(B)(iii)

Fed. R. Civ. P. 37(a)(3)(B)(iv)

Fed. R. Civ. P. 37(a)(5)(A)

[1] Case attached at back of Brief in Support.

## I. INTRODUCTION

Plaintiff has failed to fully respond to Defendant William's first and second sets of discovery. This Motion moves the Court to compel the Plaintiff to do the following: (1) respond to Defendant Williams's Interrogatory No. 22 in his first set of discovery to Plaintiff; and (2) respond to Requests for Production No. 3-5 in Defendant Williams's second set of discovery to Plaintiff.

With regard to item (1) above, undersigned counsel and Plaintiff's counsel do not agree as to the relevance of the information requested therein, and this motion therefore sets forth the legal basis as to why the information is relevant and should be provided by Plaintiff.

With regard to item (2) above, the Plaintiff has no reasonable excuse for not providing the documents requested, which are documents that support her claim that she incurred legal fees as a result of the underlying criminal matter upon which her allegations in this case are based. Plaintiff filed this case over a year ago, one of her current attorneys was also her attorney during the underlying criminal case, and the documents were requested in both Defendant Williams's first and second sets of discovery. Thus, there is no excuse for her not having produced these documents by now. The Plaintiff should be compelled to produce the documents requested or be barred from producing them to support her allegations.

## II. STATEMENT OF FACTS

### A. General Facts

On February 19, 2018, Detroit Police Department officers executed a search warrant for the search of Plaintiff's residence. As a result of the search, officers discovered marijuana, cocaine, "crack" cocaine, $96,340 in cash, a Taurus 38 Special firearm, two digital scales and a digital money counter at her residence. *See* Incident Report, attached as **Exhibit "A"**. The Plaintiff was arrested on that same day. *See* Plaintiff's Complaint and Jury Demand [ECF No. 1, PageID.2]. At the time of her arrest, the plaintiff provided a statement to officers admitting that she sold marijuana from her residence and that she was aware of the cocaine in the residence.[2] In the underlying criminal matter resulting from her arrest, Plaintiff was represented by attorney Todd R. Perkins, who is also one of her attorneys in this case. *See* Excerpt of 36th District Court Register of Actions, attached as **Exhibit "B"**. The Plaintiff alleges in her Complaint in this action, which was filed on February 12, 2021, that Defendant Williams falsified information to obtain the search warrant for the search of her residence that uncovered the aforementioned drugs, gun, money

[2] Counsel will provide documentary evidence of this fact in camera to the Court upon request. While undersigned counsel does not believe this document is confidential as that term was intended under the Stipulated Protective Order entered by the Court on October 19, 2021, since it was produced subject to that Order, it is not being submitted as an attachment to this Motion.

and other confiscated items. *See* Plaintiff's Complaint and Jury Demand [ECF No. 1, PageID.2].

**B. Facts Related to Defendant Williams's First Set of Discovery to Plaintiff**

On October 18, 2021, Defendant Williams served his First Set of Interrogatories and his First Set of Requests for Production of Documents directed to Plaintiff.[3] A copy of Defendant Williams's First Set of Interrogatories to Plaintiff ("Interrogatories") is attached hereto as **Exhibit "C"** and his First Set of Requests for Production of Documents to Plaintiff ("Requests for Production") is attached as **Exhibit "D"**. Plaintiff's responses to the Interrogatories and the Requests for Production were due thirty (30) days after service, or November 17, 2021.

The Plaintiff ignored the November 17, 2021 due date to respond to the Interrogatories and Requests for Production. On November 22, 2021, having not received responses from Plaintiff nor a request for an extension of time to respond, undersigned counsel contacted Plaintiff's counsel to inquire regarding the status of the responses. *See* Email Dated November 22, 2021 from Bryan Langepfeffer to Joel Sklar, attached as **Exhibit "E"**. Plaintiff's counsel responded that he expected the outstanding discovery to be served in "about 2-weeks" and noted that transcripts may be available later in the week. *See* Email Dated November 22, 2021 from Joel

[3] Defendant Williams also served Requests for Admission but those were timely responded to by the Plaintiff.

Sklar to Bryan Langepfeffer, attached as **Exhibit "F"**. Undersigned counsel and Plaintiff's counsel ultimately agreed to a two-week extension for the Plaintiff to respond from the date Plaintiff's counsel said it would take approximately two weeks to provide documents, or until December 6, 2021. *See* Email Dated November 23, 2021 from Bryan Langepfeffer to Joel Sklar, attached as **Exhibit "G"**.

On December 6, 2021, Plaintiff's counsel served Plaintiff's responses to the Interrogatories and the Requests for Production.

Defendant's Interrogatory No. 22 ("Interrogatory No. 22") requested the following:

> Please state whether the following items found at your residence at 12695 Coyle St., Detroit MI 48227, on February 19, 2018, as indicated in the Incident / Investigation Report attached as Exhibit A, belonged to you or another individual. If you state they belonged to another individual, please state the name of the individual that the items belonged to.
>
> a. Taurus, 38 Special Firearm
>
> b. $96,340.00 cash
>
> c. Black leather bag containing the $96,340.00 cash
>
> c. Marijuana
>
> d. Cocaine
>
> e. "Crack" Cocaine
>
> f. Digital scale and digital money counter
>
> g. Blue and white Coleman cooler containing cocaine ("Confiscated Items")

In her responses to Interrogatories, Plaintiff objected to Interrogatory No. 22 as follows:

> ANSWER: Plaintiff objects to this interrogatory for the reason that it is irrelevant and disproportionate to the needs of the case and interposed for nefarious purposes.

*See* Plaintiff's Answers to Defendant Williams's First Set of Interrogatories, Interrogatory No. 22, attached as **Exhibit "H"**.

Defendant Williams's Request for Production No. 6 requested the following:

> Produce all documents and communications which tend to substantiate the allegations in paragraph 33 of your Complaint that you suffered economic losses as a result of Defendant's actions, including but not limited to all invoices that substantiate your claim that you were required to pay legal fees as a result of Defendant's actions.

In response to Defendant Williams's Request for Production No. 6 ("Request to Produce No. 6"), the Plaintiff responded by stating, "RESPONSE: Legal fees, approximately $50,000." *See* Plaintiff's Responses to Defendant Williams's First Set of Requests for Production of Documents, Request to Produce No. 6, attached as **Exhibit "I"**. However, the Plaintiff did not provide any documents in response to Request to Produce No. 6.

On January 6, 2022, undersigned counsel sent a letter to Plaintiff's counsel requesting a response to Interrogatory No. 22 and providing case law that explains that the contraband found at the Plaintiff's residence is relevant to support the factual basis and validity of a warrant, and that it is relevant to the Plaintiff's claim of

emotional distress. *See* Letter from Bryan Langepfeffer to Joel Sklar Dated January 6, 2022 ("January 6 Letter"), attached as **Exhibit "J"**.

On January 18, 2022, Plaintiff responded to undersigned counsel's January 6 Letter by maintaining that the information sought in Interrogatory No. 22 is irrelevant and immaterial to any issue in this case. *See* Letter from Joel Sklar to Bryan Langepfeffer Dated January 18, 2022, attached as **Exhibit "K"**.

**C. Facts Related to Defendant Williams's Second Set of Discovery to Plaintiff**

On January 6, 2022, Defendant Williams served his Second Set of Interrogatories and Second Set of Requests for Production of Documents to Plaintiff (collectively, "Second Set of Discovery"). The Second Set of Discovery consisted of one (1) interrogatory and five (5) requests for production. *See* Second Set of Discovery, attached as **Exhibit "L"**. Plaintiff's responses to the Second Set of Discovery were due February 7, 2022, thirty (30) days from service on the Plaintiff.

On February 7, 2022, the due date for Plaintiff's responses to Defendant Williams's Second Set of Discovery, undersigned counsel received an email from Plaintiff's counsel stating that Plaintiff's counsel is working on the discovery responses, and that they hope to have them to undersigned counsel "shortly." There was no set date provided that responses would be provided or a request for an extension to respond. *See* Email from Joel Sklar to Bryan Langepfeffer Dated February 7, 2022, attached as **Exhibit "M"**. On February 9, 2022, undersigned

counsel sent an email to counsel in this matter seeking concurrence regarding this Motion to Compel, which originally sought to compel Plaintiff to respond to the Second Set of Discovery. *See* Email from Bryan Langepfeffer to Joel Sklar Dated February 9, 2022, attached as **Exhibit "N"**. After being asked to concur regarding the Motion to Compel, Plaintiff eventually produced responses to the Second Set of Discovery on February 11, 2022. *See* Plaintiff's Answers to Defendant Williams's Second Set of Discovery, attached as **Exhibit "O"**.

Defendant Williams's Second Set of Requests for Production of Documents contained the following three requests to produce, and Plaintiff's responses thereto produced the following corresponding responses:

> 3. Please produce copies of all invoices, bills, statements, receipts, or other documents that support your claim that you, or anyone on your behalf, incurred legal fees of approximately $50,000 related to the underlying criminal matter.
>
> **RESPONSE: Plaintiff is searching for documents responsive to this request and will supplement this document as soon as she locates them.**
>
> 4. Produce copies of all documents, including but not limited to invoices, bills, receipts or statements, that support your claim that your family members and friends assisted you with paying legal fees related to the underlying criminal matter.
>
> **RESPONSE: Plaintiff was charged a flat fee of $25,000 for work before the trial court and another $25,000.00 for the appeal. Plaintiff is searching for documents responsive to this request and will supplement this document as soon as she locates them.**

> 5. Produce copies of all documents, including but not limited to invoices, bills, receipts or statements, that support your claim that you used personal savings to pay legal fees related to the underlying criminal matter.
>
> **RESPONSE: Plaintiff is searching for documents responsive to this request and will supplement this document as soon as she locates them.**

*See* **Exhibit "O"**. Plaintiff has not produced any documents to date, either in response to Defendant Williams's first or second set of discovery, that support her claim that she, or anyone on her behalf, incurred legal fees related to the underlying criminal matter.

## II. LEGAL ARGUMENT

### A. The Court Should Compel Plaintiff to Answer Defendant Williams's Interrogatory No. 22

Interrogatory No. 22 from Defendant Williams's first set of discovery requests the Plaintiff state whether the Confiscated Items found at her residence on the day she was arrested belonged to her or another individual, and if they belong to another individual, then to provide the name of the individual. Plaintiff has objected to responding to Interrogatory No. 22 because she claims it is irrelevant, disproportionate to the needs of the case and interposed for nefarious purposes.

The determination of whether these items belong to the Plaintiff or to whom they belong is relevant for at least the following reasons: (1) the existence of these items at her residence and who they belonged to is relevant to the validity and

veracity of the search warrant and affidavit the Plaintiff alleges was based on false information; and (2) the existence of these items at her residence and who they belonged to is relevant to her claim for emotional distress because if these items belonged to the Plaintiff, if she knew of them or if she was engaged in the sale of them, then her claim for emotion distress is significantly undermined.

Fed. R. Civ. P. 26(b)(1) states, in part, that unless limited by court order, the parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1) further states that information within this scope of discovery need not be admissible in evidence to be discoverable. The relevancy standard set forth in Rule 26(b)(1) "is commonly recognized as one that is necessarily broad in its scope in order 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'" *Nucorp, Inc v Does 1-24*, ___F Supp 3d___; 2012 U.S. Dist. LEXIS 187547, at *18 (ED Mich, Oct. 18, 2012).

1. *The existence of contraband at the Plaintiff's Residence and a determination of who the contraband belonged to is relevant to the validity and veracity of the search warrant.*

The crux of Plaintiff's allegation that Defendant Williams violated her Fourth and Fourteenth Amendment Rights is that Defendant Williams falsified information in a search warrant for the search of the Plaintiff's residence at 12695 Coyle in

Detroit ("Plaintiff's Residence"). *See* Plaintiff's Complaint and Jury Demand [ECF No. 1, PageID.6-7]. Thus, a central issue in this case is the validity and veracity of the search warrant for the Plaintiff's Residence.

In a factually analogous case, *Frontczak v. City of Detroit*, an officer testified that his attention was drawn to a house by a confidential information, who told him that someone living at the address was conducting marijuana sales from the premises, and he then arranged for a paid confidential source (SOI) to perform a controlled buy at the property. *See Frontczak v City of Detroit*, No. 18-13781, 2021 U.S. Dist. LEXIS 185207 at 3-4; 2021 WL 440332 (E.D. Mich, Sept. 28, 2021). Like in this case, the execution of the search warrant in *Frontczak* uncovered drugs and the heart of the Plaintiff's case was that he was subject to an unreasonable search and seizure due to the officer's alleged falsification of the warrant application. *See Frontczak*, 2021 U.S. Dist. LEXIS 185207 at 5-6; 14-15. In determining that the officer was entitled to qualified immunity, United States District Court Judge Robert H. Cleland found that the results of the search producing the materials sought in the warrant supports the validity of the affidavit. *See Id.* at 26. Judge Cleland reasoned that in the civil context, the results of a search may be of probative value to the relevance or significance of an SOI's information. *See Id.* He further opines, as explained by the court in *Hunt v. City of Toledo Law Dep't.*, that the success of the

search lends at least some further support to the factual basis of the warrant. *See Id.* at 27.

Here, the Plaintiff has alleged that Defendant Williams falsified information, including the very existence of a confidential informant. The facts surrounding what was found during the execution of the search warrant and who those items belonged to supports the veracity and validity of the warrant, the central issues in this case. If the drugs found at the Plaintiff's residence belonged to the target of the search warrant, then that supports a finding that the source of information existed and that the information in the warrant was true.

Discovery rules are intended to be broad and allow for the inquiry into any matter that is relevant to any party's claim or defense, regardless of whether it is admissible, which encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Nucorp, Inc v Does 1-24*, ___F Supp 3d___; 2012 U.S. Dist. LEXIS 187547, at *18 (ED Mich, Oct. 18, 2012).

Inquiry regarding who the Confiscated Items belonged to is not only relevant to the Plaintiff's claims but also Defendant Williams's defenses, including his affirmative defense that any injury or damage suffered by Plaintiff was caused by reason of Plaintiff's wrongful acts and wrongful conduct.

2. *Whether the Confiscated Items belonged to the Plaintiff, and her knowledge regarding who they belonged to is relevant to the Plaintiff's claimed damages.*

The existence of the Confiscated Items at the Plaintiff's residence and who the Confiscated Items belonged to is relevant to Plaintiff's claim for emotional distress because if these items belonged to the Plaintiff, if she knew of them or if she was engaged in the sale of them, then her claim for emotion distress is significantly undermined. Plaintiff's Complaint and Jury Demand alleges that because of Defendant Williams's actions, she has suffered fear, outrage, emotional distress, anxiety, mortification, anger, humiliation, loss of the enjoyment of life. *See* Plaintiff's Complaint and Jury Demand [ECF No. 1, PageID.8]. If the Plaintiff was engaged in illegal activity or had knowledge that illegal activity was being conducted from her residence, such as the sale of drugs, it contradicts her claim for emotional injury. More specifically, it is contradictory that the Plaintiff would be conducting illegal activity from her residence or have knowledge of it, and then be humiliated or angered by her arrest for the activity that was being conducted from her residence.

Finally, Defendant Williams's Interrogatory No. 22 is not disproportionate to the needs of the case. The Plaintiff has made serious allegations against Defendant Williams and seeks significant monetary damages from him, while the Plaintiff is only being asked to provide her knowledge regarding who the Confiscated Items found in her home belonged to.

**B. <u>The Court Should Compel Plaintiff to Provide Documents in Response to Defendant Williams's Requests for Production No. 3-5 in his Second Set of Discovery</u>**

Fed. R. Civ. P. 34 ("Rule 34") allows a party to serve requests for production of documents on an opposing party. A party receiving requests for production of documents pursuant to Rule 34 has thirty (30) days to respond with answers or objections. Fed. R. Civ. P. 34(b)(2)(A). If the receiving party fails to respond to requests for production of documents within thirty (30) days, Fed. R. Civ. P. 37 ("Rule 37) provides the party who sent the discovery the means to file a motion to compel. Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). If a court grants a Rule 37 motion to compel, then the court must award reasonable expenses, including attorney's fees, unless the successful party did not confer in good faith before the motion, the opposing party's position was substantially justified, or other circumstances would make an award unjust. Fed. R. Civ. P. 37(a)(5)(A).

In his first set of discovery served on Plaintiff on October 18, 2021, Defendant Williams's Request to Produce No. 6 requested all documents that substantiate Plaintiff's allegation that she was required to pay legal fees as a result of Defendant Willliams's action. In response, she stated "Legal fees, approximately $50,000," but provided no documents to support this claim. *See* **Exhibit "I"**.

In his Second Set of Discovery served on January 6, 2022, Defendant Williams requested documents that substantiate the Plaintiff's claims that she, or

others on her behalf, incurred legal fees related to the underlying criminal matter, that her family and friends assisted her with paying legal fees, and that she used personal savings to pay legal fees related to the underlying criminal matter. *See* **Exhibit "O"**, Responses to Requests to Produce No. 3-5. In response to these requests to produce documents that substantiate her claims, Plaintiff stated that she "is searching for documents responsive to this request and will supplement this document as soon as she locates them." *See* **Exhibit "O"**, Responses to Requests to Produce No. 3-5.

Plaintiff filed her Complaint in this action over a year a ago, and therefore has had at least one (1) year to locate and prepare documents to support her claimed damages. She has had over four (4) months to locate documents since Defendant Williams's served his first set of discovery requesting Plaintiff provide documents that substantiate her allegation that she was required to pay legal fees because of Defendant Williams. Finally, Plaintiff has had approximately seven (7) weeks to locate documents since Defendant Williams's served his Second Set of Discovery.

In addition to ample time Plaintiff has had to locate and provide documents, the attorney that represented her in the underlying criminal matter, whom she presumably paid for her legal services, is also her attorney in this case.

There is simply no excuse for the Plaintiff not having provided documents to support her claim that she incurred legal fees related to the underlying criminal

matter, unless the documents do not exist. Therefore, Defendant Williams requests that this Court order Plaintiff to provide documents responsive to Defendant Williams's Requests to Produce No. 3-5 in his Second Set of Discovery, or bar Plaintiff from producing evidence of such alleged damages, and award him attorney fees and costs incurred for bringing this Motion.

## III. CONCLUSION

For the reasons set forth herein, Defendant Williams respectfully requests that this Honorable Court enter an Order pursuant to Fed. R. Civ. P. 37 compelling Plaintiff to respond to Defendant Williams's Interrogatory No. 22 and to provide documents responsive to Defendant Williams's Requests to Produce No. 3-5 in his Second Set of Discovery within five (5) days of the Order, or suffer such sanction as the Court may impose, including but not limited to barring Plaintiff from producing documents that support her claim that she incurred legal fees as a result of Defendant Williams's actions, and award Defendant Williams costs and attorney fees associate with the filing of this Motion.


Neutral

As of: February 24, 2022 4:02 PM Z

# Frontczak v. City of Detroit

United States District Court for the Eastern District of Michigan, Southern Division

September 28, 2021, Decided; September 28, 2021, Filed

Case No. 18-13781

**Reporter**

2021 U.S. Dist. LEXIS 185207 *; 2021 WL 4440332

NICK FRONTCZAK, as the Public Administrator for the Estate of MICHAEL McSHANE, deceased, Plaintiff, v. CITY OF DETROIT, et al., Defendants.

**Prior History:** *Frontczak v. City of Detroit, 2019 U.S. Dist. LEXIS 177864, 2019 WL 5191892 ( E.D. Mich., Oct. 15, 2019)*

## Core Terms

search warrant, probable cause, marijuana, excessive force, qualified immunity, raid, conspiracy, seizure, arrest, narcotics, class action, warrant application, summary judgment, summary judgment motion, statute of limitations, allegations, genuine, tolling, unlawful search, reckless, seized, false information, warrant affidavit, Plaintiffs', quantity, searched, police officer, deliberate, detention, falsified

**Counsel:** **[*1]** For Nick Frontczak, as the Public Administrator for the Estate of Michael McShane, deceased, Michael Valentino, Plaintiffs: Dennis A Dettmer, Dettmer and Dezsi, PLLC, Detroit, MI; Michael R. Dezsi, Law Office of Michael R. Dezsi, PLLC, Detroit, MI.

For City of Detroit, Kenneth Ballnski, Stephen Geelhood, In their Individual and Official Capacities, Matthew Bray, Reginald Beasley, Larry Barnett, Amy Matelic, Marlon Wilson, Gregory Tourville, Defendants: James P. Allen, Allen Brothers, Detroit, MI; James M. Surowiec, Lindsey R. Johnson, Allen Brothers, Attorneys and Counselors, PLLC, Detroit, MI.

**Judges:** ROBERT H. CLELAND, UNITED STATES DISTRICT JUDGE.

**Opinion by:** ROBERT H. CLELAND

## Opinion

**OPINION AND ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

On March 20, 2014, Defendants, all members of the Detroit Police Department's (DPD) narcotics unit, searched Plaintiff's[1] home pursuant to a search warrant supported by the affidavit of Defendant Officer Matthew Bray. In his affidavit, Bray incorporates information obtained from a confidential source registered with the City of Detroit as Source of Information ("SOI") #2149. Plaintiff filed a three-count amended complaint related to this search, containing claims for **[*2]** illegal search and seizure, municipal liability, and civil conspiracy. The crux of Plaintiff's illegal search claim turns on whether

[1] The court uses "Plaintiff" to refer to Nick Frontczak acting as the Public Administrator for the Estate of the deceased named Plaintiff Michael McShane.

Defendants possessed probable cause to obtain a search warrant. Plaintiff asserts that they did not, alleging that Bray's affidavit contained materially false information. The Defendants have now filed three motions that collectively seek summary judgment on all counts in Plaintiff's complaint. (*See* ECF Nos. 84, 85, 110.) The court finds a hearing unnecessary. *E.D. Mich. L.R. 7.1(f)(2)*. For the reasons provided below, the court will grant Defendants' three motions for summary judgment.

**I. BACKGROUND**

**A. Facts**

On March 20, 2014, Defendants, Detroit Police Officers Mathew Bray, Gregory Tourville, Reginald Beasley, Larry Barnett, and Amy Matelic, searched Plaintiff's home located at 1556 W. Troy in Ferndale, Michigan, pursuant to a search warrant and under the supervision of Defendant Sgt. Steven Geelhood. (ECF No. 84, PageID.2416; ECF No. 87, PageID.3089.) The search warrant was based on the affidavit of Defendant Bray, which alleged the following facts:

> The Affiant is working in conjunction with other members and SOI #2149. SOI #2149 has been used by members of the Narcotics Division **[*3]** on over one hundred (100) occasions, resulting in the arrests of over one hundred (100) persons for narcotic and related offenses, SOI #2149 has provided credible and reliable information in the past that has yielded significant quantities of Marijuana, heroin and cocaine.
>
> On March 19th, 2014 affiant met with SOI #2149. The SOI was searched for drugs and money, with none being found. The SOI was issued a quantity of Detroit Police Funds and instructed to attempt a purchase of illicit drugs at 1556, W. Troy. The SOI was then observed to go directly to front of target location and met up with seller. Seller and SOI went up into target location. The SOI returned a brief moment later (less th[a]n two minutes) and turned over a quantity of suspected marijuana stating that it was purchased from the SELLER at the target location. The SOI was again searched for drugs and money, with none being found. The suspected marijuana was transported to Narcotics Division Offices for analysis by P.O. Johnson #4011 and placed in LSF# N05216311. The test proved positive for marijuana.

(ECF No. 57-2, PageID.769.)

Bray testified that his attention was first drawn to the house at 1556 West Troy by a confidential **[*4]** informant, who told him that someone living at the address was conducting street-level marijuana sales out of the premise. (ECF No. 84, PageID.2416.) According to Bray, without the assistance of other members of the narcotics crew, he organized and observed a controlled buy of marijuana at the house on March 19, 2020, using Source of Information #2149 (a paid confidential source) that had proven to be reliable in the past. (*Id.*) On March 20, 2014, Judge Lyndia Nance-Adams authorized a search warrant for 1556 West Troy St. after Bray submitted the above-excerpted affidavit.

The deposition testimony of the now-deceased Plaintiff, Michael McShane, directly contests key pieces of this affidavit. While McShane admitted to growing a large quantity of marijuana in his home, Plaintiff states that he did so legally under Michigan's Medical Marihuana Act, *Mich. Comp. Laws Ann. § 333.26421*, to provide for five patients for whom he allegedly served as a "caregiver" under the Act.[2] McShane, however completely denied

[2] Defendants, by contrast, point out that during discovery McShane was able to produce medical marijuana "cards" for

ever selling drugs to SOI #2149 on March 19, 2014. (*See* ECF No. 89-3, PageID.3204 ("I did not have some kind of drive-through window that somebody could get marijuana and be on their way in two minutes . . . I wasn't **[*5]** selling marijuana to anybody that was outside my prescribed range of people that I could from the State of Michigan and the Marijuana Act. So no, it did not happen.").)

At approximately 1:15 p.m. on March 20, 2014, with Sgt. Steven Geelhood supervising, officers Mathew Bray, Gregory Tourville, Reginald Beasley, Larry Barnett, and Amy Matelic executed the search warrant. (*Id.*, PageID.2417.) The officers found McShane in the basement and his roommate upstairs in the home. Both were temporarily detained. (*Id.*, PageID.2418.) McShane was ordered to the ground and was let up after "a couple of minutes." (ECF No. 89-3, PageID.3205) (McShane testified that he was pushed to the floor with an "MP5 machine gun" pointed at the back of his head, an allegation immaterial to the innate legitimacy of the warrant which in any event the Defendants dispute.) (*See Id.*) McShane did not seek any medical treatment for any alleged injuries following the raid, and he stated that the officers left within forty-five minutes. (*Id.*, PageID.3206.) He was not taken into custody more than the noted brief detention, and was never charged with a crime.

It is undisputed that during the raid the officers seized fifty **[*6]** marijuana plants in different stages of growth, "several pounds" of wet unfinished marijuana, and a smaller quantity of processed marijuana. (ECF No. 84, PageID.2420; ECF No. 89-3, PageID.3203.) The officers also seized $914 in cash that was found in the home. (ECF No. 84, PageID.2420.) The evidence from the raid was placed into sealed evidence bags—some of which were sent to the Michigan State Police crime lab for testing. (*Id.*) The seized cash was later returned to McShane by the Wayne County Prosecutor's office after it declined to pursue forfeiture proceedings. (ECF No. 84-23, PageID.2574.)

Plaintiff contends that he was targeted for such a raid without probable cause as part of a larger pattern of such unlawful raids by the DPD Narcotics, a unit that was later disbanded. He argues that evidence exposed during other criminal and civil lawsuits shows that the DPD narcotics officers in question "were conducting unlawful raids for their own pecuniary gain." (ECF No. 87, PageID.3098.)

**B. Procedural History**

The instant *42 U.S.C. § 1983* action arose as one of five cases from a failed class action lawsuit against the City of Detroit and individual officers that was denied class certification.[3] *Davis v. City of Detroit, No. 15-10547, 2018 U.S. Dist. LEXIS 149351, 2018 WL 4179316 (E.D. Mich. Aug. 31, 2018)* (Borman, **[*7]** J.). The present action was filed on December 6, 2018. (ECF No. 1.) Plaintiff filed an amended complaint on October 16, 2019. (ECF No. 43.) While Michael Valentino, McShane's housemate, was also a Plaintiff in the present action, he was later dismissed with prejudice after he repeatedly failed to appear for his deposition.

only two individuals. (*See* ECF No. 84-2, PageID.2489 (McShane testifying that he had cards for five individuals but when he looked for the cards and could not find them).) Defendants infer that Plaintiff was not complying with the twelve plants per "registered qualifying patient" limit contained in Michigan's Medical Marihuana Act. *See Mich. Comp. Laws Ann. § 333.26424*.

[3] In addition to the instant case, these lawsuits include: *Reid v. City of Detroit, et al.*, No. 18-13681; *Lockard v. City of Detroit, et al.*, 18-13045; *Gardella v. City of Detroit, et al.*, No. 18-13687; and *Metris-Shamoon v. City of Detroit, et al.*, No. 18-13683.

(ECF No. 53.)

Plaintiff's Amended Complaint contains three enumerated counts. (*See* ECF No. 43.) Count I alleges a violation of Plaintiff's *Fourth Amendment* rights because his "arrest and detention . . . were undertaken by Defendants without probable cause and without regard to any legitimate law enforcement interest." (*Id.*, PageID.645-46.) Count II is a *Monell* claim against Defendant City of Detroit for "inadequate training and/or supervision" of Defendant officers who at the time worked in DPD's Narcotics Unit. (*Id.*, PageID.646-47.) Count III alleges that the Defendant officers "[o]perat[ed] under a common plan to violate Plaintiffs' constitutional rights (i.e., by unlawfully searching and seizing Plaintiffs), [which each of the individual **[*8]** Defendants] actively participated in and provided substantial assistance." (*Id.*, PageID.649.)

## II. STANDARD

To prevail on a motion for summary judgment, a movant must show—point out—that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)*. First, the moving party bears the initial burden of presentation that "demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. There is no requirement, however, that the moving party "support its motion with [evidence] negating the opponent's claim." *Id.* (emphasis removed); *see also* *Emp'rs Ins. of Wausau v. Petrol. Specialties, Inc., 69 F.3d 98, 102 (6th Cir. 1995)*.

Second, "the nonmoving party must come forward with 'specific facts showing that there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)* (emphasis removed) (quoting *Fed. R. Civ. P. 56(e)*). This requires more than a "mere existence of a scintilla of evidence" or "'[t]he mere possibility of a factual dispute." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*; *Mitchell v. Toledo Hosp., 964 F.2d 577, 582 (6th Cir. 1992)* (quoting *Gregg v. Allen-Bradley Co., 801 F.2d 859, 863 (6th Cir. 1986)*). For a court to deny summary judgment, "the evidence [must be] such that a reasonable [finder of fact] could return a verdict for the nonmoving party." *Anderson, 477 U.S. at 248*. All reasonable inferences from the underlying facts must be drawn "in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc., 369 U.S. 654, 655, 82 S. Ct. 993, 8 L. Ed. 2d 176 (1962)*; *Moran v. Al Basit LLC, 788 F.3d 201, 204 (6th Cir. 2015)*.

## III. DISCUSSION

### A. Excessive Force [*9] Claim

In his Amended Complaint, Plaintiff brings a claim in Count I for "Violation of the *Fourth Amendment*." (ECF No. 43, PageID.465-46.) The allegations contained in this claim indicate that the claim is for "unlawful and unreasonable search and seizure" (Id. at ¶ 34), and that Plaintiff's "arrest and detention . . . were undertaken by Defendants without probable cause." (*Id.* at ¶ 37.) Plaintiff's summary judgment briefing now suggests that excessive force may have been used during the raid. (*See* ECF No. 87, PageID.3126-37 (citing McShane's testimony that he was thrown to the ground while officers put a gun to the back of his head).) But the words "excessive force" do not appear in the current version of the complaint. Nor do the words "excessive force" appear in the complaint filed in the failed *Davis* class action. *See Davis v. City of Detroit*, Case No. 15-cv-10547, ECF No. 23.

Defendants argue, in a joint motion for summary judgment, that both Plaintiff's implicit excessive force claim and explicit "conspiracy/concert of action" claim are time barred because they were not asserted in the original *Davis* class action nor were the claims asserted in the present suit before the applicable statute of **[*10]** limitations had run.[4] (ECF No. 110, PageID.4491.) Defendants concede that "*American Pipe* tolling suspended the applicable statute of limitations as to all asserted members of the [Davis] class (like [Plaintiff]) who would have been parties had the suit been permitted to continue as a class action." (*Id.*, PageID.4493 (citing *American Pipe & Construction Co. v. Utah, 414 U.S. 538, 554, 94 S. Ct. 756, 38 L. Ed. 2d 713 (1974)*.) But they point out that "'[t]he tolling rule of *American Pipe* . . . should not be read . . . as leaving a plaintiff free to raise different or peripheral claims following denial of class status.'" (*Id.* (quoting *Crown, Cork & Seal Co. v. Parker, 462 U.S. 345, 354, 103 S. Ct. 2392, 76 L. Ed. 2d 628* (Powell, J. concurring)).) Therefore, Defendants contend that *American Pipe* tolling only preserved Plaintiff's "claims of unlawful search and seizure and deprivation of property without due process." (*Id.*)

In response, Plaintiff contends that a claim of excessive force is subsumed within his unlawful search and seizure *Fourth Amendment* claim that focuses on the search warrant affidavit. (*See* ECF No. 113, PageID.4658-59 ("Plaintiff isn't attempting to raise a 'new' or different claim that wasn't set forth in *Davis*: both actions assert the same *Fourth Amendment* claims based on an unreasonable seizure.").) The plaintiffs in *Lockard v. City of Detroit et al.*, another *Fourth Amendment* complaint spun off **[*11]** from the failed *Davis* class action, made an almost identical argument, and the district court presented a detailed analysis explaining why *American Pipe* tolling did not apply to a similar excessive force claim. The court provided the following analysis in *Lockard*:

> [T]he Court finds that because a claim for excessive force in this case arises out of a different factual and legal nexus than the claim upon which the *Davis* class action was based (unlawful search and seizure without probable cause), the claim for excessive force does not benefit from *American Pipe* tolling and is barred by the statute of limitations.
>
> The *Davis* class action plaintiffs' proposed class identified putative class members, tied to the lack of probable cause in search warrants. (*Davis v. City of Detroit*, 15-10547, Mot. for Class Cert., ECF No. 111-4 PageID.4142-43.) There was no specific claim for excessive force in the Davis complaint, and nothing to suggest excessive force was a basis for class certification.
>
> An unlawful search and seizure based on a lack of probable cause is conceptually and legally different than a claim for excessive force. *See e.g., Nails v. Riggs, 195 F. App'x 303, 313-14 (6th Cir. 2006)* ("The issues of whether there was probable cause to arrest **[*12]** and whether excessive force was used are distinct."); *Humphrey v. Mabry, 482 F.3d 840, 849 (6th Cir. 2007)* (treating the unlawful seizure claim as based on whether the warrantless arrest was based on reasonable suspicion, and

---

[4] Both parties seem to agree (correctly) that Michigan's three-year statute of limitations for personal injury actions, *Mich. Comp. Laws. § 600.5805(10)*, applies to Plaintiff's *section 1983* civil rights claims absent tolling. *See Wilson v. Garcia, 471 U.S. 261, 276-280, 105 S. Ct. 1938, 85 L. Ed. 2d 254 (1985)*; *McCune v. City of Grand Rapids, 842 F.2d 903, 905 (6th Cir. 1988)*; *Drake v. City of Detroit, 266 F. App'x 444, 448 (6th Cir. 2008)* (specifically citing *Mich. Comp. Laws § 600.5805(10)*).

> analyzing the claim for excessive force separately); *Cortez v. McCauley, 478 F.3d 1108, 1127 (10th Cir. 2007)* (regarding claims of unlawful arrest and excessive force, the court noted that, "[t]hese two inquiries are separate and independent, though the evidence may overlap.").
>
> . . .
>
> Similarly to [*Currithers v. FedEx Ground Package Sys., Inc.*], where tolling on the fraud claim "ended when it was excluded from plaintiffs' motion for class certification," so too here, an excessive force claim was not included in the *Davis* class action complaint, nor in the motion for class certification. *2012 U.S. Dist. LEXIS 17327, 2012 WL 458466, at *8 (E.D. Mich. Feb. 13, 2012)*. Nor is it specifically brought in [the Plaintiffs'] instant complaint. Thus, Plaintiffs' attempt to add a claim of excessive force, does not benefit from *American Pipe* tolling, and is time barred.

*Lockard v. City of Detroit, No. 18-13045, 2021 U.S. Dist. LEXIS 164489, 2021 WL 3883263, at *3-*4 (E.D. Mich. Aug 31, 2021)* (Borman, J.). The court sees no reason to depart from the tolling analysis in *Lockard*. The court holds that Plaintiff in the present action cannot raise a claim for excessive force during the execution of the search warrant because the claim was not asserted in the *Davis* class action, so the **[*13]** statute of limitations for such a claim had already run by the time the present action was filed in December 2018. *See id.*

**B. Conspiracy/Concert of Action Claim**

Likewise, the court finds that Plaintiff's "conspiracy/concert of action" claim is barred by the statute of limitations. Plaintiff admits "that the *Davis* Complaint does [not] include a count entitled 'Concert of action/conspiracy,' however [he contends] the *Davis* Complaint does allege that Defendants were 'jointly and severally' liable."[5] (ECF No. 113, PageID.4650 ¶14.) Other than this single sentence, Plaintiff does not attempt to argue in support of the conspiracy claim. Therefore, given Plaintiff's concession that the claim was not included in the failed *Davis* class action, the court concludes that the conspiracy count is also barred by the statute of limitations.

Even if, *arguendo*, the court assumes the conspiracy claim is not barred by the statute of limitations, since all the individual Defendants were employees of the City of Detroit when the raid took place, Plaintiff's conspiracy claim would fail under the intracorporate conspiracy doctrine. The "doctrine . . . states that if 'all of the defendants are members of the **[*14]** same collective entity, there are not two separate 'people' to form a conspiracy.'" *Jackson v. City of Cleveland, 925 F.3d 793, 817 (6th Cir. 2019)*, *cert. denied sub nom* (quoting *Johnson v. Hills & Dales Gen. Hosp., 40 F.3d 837, 839-40 (6th Cir. 1994)*.) In *Jackson*, the Sixth Circuit found that the intracorporate conspiracy doctrine applies to claims brought under either *§1983* or *§1985* "where two or more employees of the same entity are alleged to have been acting within the scope of their employment when they allegedly conspired together to deprive the plaintiff of his rights." *Id. at 818*. And "an employee's actions may be within the scope of his or her employment even if the actions constitute intentional

---

[5] Neither *42 U.S.C.1983* nor Michigan law allow a plaintiff to pursue a "joint and servable" liability theory for such a claim. *See Smith v. Michigan, 256 F. Supp. 2d 704, 712 (E.D. Mich. 2003)* (holding both that "there is no joint and several liability under *42 U.S.C. § 1983* . . . [as a] 1983 [claim] requires a showing of responsibility for personal wrongdoing" and "*MCL 600.2956* provides that in tort actions seeking damages for personal injury, property damage, or wrongful death, liability of each defendant for damages is several only, and not joint.") (Roberts, J.).

torts." *Arbour v. Jenkins, 903 F.2d 416, 422 (6th Cir. 1990)*. *See, e.g., Raudabaugh v. Baley, 133 Mich. App. 242, 350 N.W.2d 242 (1983)* (false arrest); *Ray v. City of Detroit, 67 Mich. App. 702, 242 N.W.2d 494 (1976)* (holding city liable for intentional tortious conduct by a city employee). Because Plaintiff has presented no evidence, and does not even allege, that Defendant officers were acting outside of the scope of their employment when they obtained the warrant and conducted a raid on his Ferndale home, his conspiracy claim also fails as a matter of law.

**C. Unlawful Search and Seizure**

**i. Mathew Bray**

The heart of Plaintiff's case is Plaintiff's allegation that he was subject to an unreasonable search and seizure due to Defendant Bray's alleged decision to falsify a warrant application.

Defendant Bray, like **[*15]** all the Defendant officers in the present case, argues that Plaintiff's *Fourth Amendment* claim is barred by qualified immunity. To "shield officials from harassment, distraction, and liability when they perform their duties reasonably," courts have devised a two-part test to protect government officials from civil litigation. *Pearson v. Callahan, 555 U.S. 223, 231, 129 S. Ct. 808, 172 L. Ed. 2d 565 (2009)*. Courts consider: "(1) whether the alleged facts, viewed in the light most favorable to the plaintiff, show that the official's conduct violated a constitutional right, and (2) whether that constitutional right was clearly established." *Rieves v. Town of Smyrna, 959 F.3d 678, 695 (6th Cir. 2020)*. "A right is clearly established when a reasonable officer would know—in the given situation and with the information known to him at the time—that his conduct violated that right." *Id.* Stated another way, "[i]f reasonable officials could disagree as to whether the conduct at issue was lawful, then qualified immunity applies." *Id.*

The *Fourth Amendment* protects individuals from search or arrest without probable cause. *Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 564, 91 S. Ct. 1031, 28 L. Ed. 2d 306 (1971)*; *Devenpeck v. Alford, 543 U.S. 146, 152-53, 125 S. Ct. 588, 160 L. Ed. 2d 537 (2004)*. An individual may bring an action under *§ 1983* for an unlawful search or false arrest when "the officer lacked probable cause" for his actions.[6] *Voyticky v. Vill. of Timberlake, 412 F.3d 669, 677 (6th Cir. 2005)*.

However, "an officer . . . cannot rely on a judicial determination of probable cause if that officer knowingly **[*16]** makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Vakilian v. Shaw, 335 F.3d 509, 517 (6th Cir. 2003)*; *see also Yancey v. Carroll Cnty., 876 F.2d 1238, 1243 (6th Cir. 1989)* (tying the standard to the legal principle that "[p]olice officers are entitled to rely on a judicially secured warrant . . .

[6] It is "clearly established" that a police officer cannot purposefully make a materially false statement in securing a warrant. *Rieves v. Town of Smyrna, Tennessee, 959 F.3d 678, 695 (6th Cir. 2020)*. The Sixth Circuit has explicitly stated that "[a] reasonable police officer would know that fabricating probable cause, thereby effectuating a seizure, would violate a suspect's clearly established *Fourth Amendment* right to be free from unreasonable seizures." *Webb v. United States, 789 F.3d 647, 667 (6th Cir. 2015)* (quoting *Spurlock v. Satterfield, 167 F.3d 995, 1006 (6th Cir. 1999)*). The law is not unclear; a reasonable officer in Defendant Bray's position would have known that submitting false information for warrant approval deliberately or with reckless indifference is illegal. *Rieves, 959 F.3d at 695*. Since this prong is satisfied, Defendant Bray would not be entitled to qualified immunity if he indeed intentionally, or with reckless disregard for the truth, presented information on the warrant application regarding a drug sale to an SOI that was false.

unless [it] is so lacking in indicia of probable cause, that official belief in the existence of probable cause is unreasonable"). In cases where a police officer provided false information to obtain a warrant, the Sixth Circuit has devised a two-part test to determine if a plaintiff can bring a claim despite qualified immunity and despite the existence of a facially valid warrant. "To overcome an officer's entitlement to qualified immunity . . . a plaintiff must establish: (1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Vakilian, 335 F.3d at 517*.

The standard is derived from the Supreme Court's decision in the analogous setting of motions to suppress in *Franks v. Delaware, 438 U.S. 154, 171-72, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)*. The *Franks* court emphasized that "[a]llegations of negligence or innocent mistake are insufficient" to claim false arrest. **[*17]** *Id.* The Sixth Circuit has since reiterated that even in the posture of a summary judgment motion, a plaintiff asserting an unlawful search or false arrest claim must make a "substantial" showing of deliberateness or reckless disregard. *Butler v. City of Detroit, 936 F.3d 410, 418 (6th Cir. 2019)*; *accord* *Bullock v. City of Detroit, 814 F. App'x 945, 951 (6th Cir. 2020)*. It is a "demanding standard" established with "the recognition that a police officer swearing out an affidavit can make mistakes and yet remain protected by qualified immunity." *Butler, 936 F.3d at 418*. The Sixth Circuit has also described this test as distinct from traditional summary judgment analysis. "Whether [a plaintiff] makes [a substantial preliminary showing of intentionality] is *a question of law for the court*." *Newell v. Wayne Cnty., 733 F. App'x 286, 290 (6th Cir. 2018)* (emphasis added); *see also* *Hale v. Kart, 396 F.3d 721, 726-27 (6th Cir. 2005)* ("[The court's] inquiry is whether the plaintiff made a strong preliminary showing that the affiant intended to mislead the judge by omitting information from the affidavit. Only then can we address the question of whether a factual matter related to probable cause exists that would preclude summary judgment.").

In the analogous *Franks* context, the Sixth Circuit has held that "reckless conduct is not measured by a reasonably prudent man standard . . . [t]here must be sufficient evidence to permit the conclusion that **[*18]** the defendant in fact entertained serious doubts as to the truth of the statements." *United States v. Cican, 63 F. App'x 832, 835 (6th Cir. 2003)*; *accord* *United States v. Bateman, 945 F.3d 997, 1008 (6th Cir. 2019)*. "In almost all cases, subjective recklessness must be proven circumstantially." *Cican, 63 F. App'x at 837*.

Plaintiff attempts to distinguish these binding precedents by arguing that a Plaintiff challenging a search warrant is *only* required to make "a substantial preliminary showing of falsity" in cases where an officer is accused of misleading a judge "*by omitting information from the affidavit*." (ECF No. 87, PageID.3108 (citing *Hale, 396 F.3d at 721*).) Plaintiff argues that because his "instant claims do not involve a claim that [Defendant] Bray omitted exculpatory (*Brady*) facts from his affidavits, but rather that he fabricated, entirely, the events of his search warrant" that he is not required to make such a heightened preliminary evidentiary showing under the test articulated in *Vakilian*. (*Id.*)

A recent published Sixth Circuit decision, however, demonstrates that Plaintiff's purported distinction is merely an artifice. In *Butler v. City of Detroit, 936 F.3d 410, 415-16 (6th Cir. 2019)*, a police officer submitted an affidavit to obtain a search warrant of the plaintiff's home. The officer stated that a knowledgeable informant had been at plaintiff's address "numerous times," including "within **[*19]** the last twenty-four hours," and that "large amounts of narcotics and US currency" were

stored at plaintiff's house. *Id. at 414*. The officer continued and asserted that he had personally observed vehicles linked to violent drug dealers parked at Plaintiff's residence; the officer stated explicitly that he repeatedly saw a drug dealer go to Plaintiff's house and, at one point, carry in a "brown bag." *Id. at 415*. The officer even claimed to observe a controlled heroin purchase at the plaintiff's residence. *Id. at 416*. All these statements proved false, yet police conducted the search, applied force against a "cooperative" plaintiff, and seized plaintiff's property, including $5,000 in cash that the plaintiff alleged was never returned. *Id.* The district court denied qualified immunity for the officer making false statements to obtain a warrant. *Id.*

The Sixth Circuit reversed. The court emphasized that even in the summary judgment context, where the officer included objectively false information in the affidavit, "[t]o overcome [qualified] immunity, a plaintiff must present 'substantial' evidence to show a more culpable mindset" on the part of the officer seeking a warrant. *Id. at 418-422* (citing *Franks, 438 U.S. at 170*; *Vakililan, 335 F.3d at 517*). Even though the officer could **[*20]** have checked the record and confirmed that plaintiff's house had no connection to illegal narcotics (there were basic logical inconsistencies regarding the location of the plaintiff's house compared to the alleged drug dealers), and despite the officer's explicit and false statements that he personally observed transactions occurring at the plaintiff's residence, the court held that evidence of the officer writing the wrong house "tells [the court] nothing about [the officer's] mental state." *Id. at 419*. Even though the officer later "freely acknowledge[d]" that the report contained false information, the plaintiff's failure to provide a substantial preliminary showing that the officer was not only negligent (by confusing houses) but acted with "recklessness or willfulness" was fatal to the plaintiff's claim at the summary judgment stage. *Id. at 422*. Merely showing the officer's statements were false is "not . . . enough to deny [him] qualified immunity." *Id. at 419*. In addition to articulating the significant mental state requirements for such a claim, *Butler* clearly demonstrates that Plaintiff is incorrect and that the heightened "substantial preliminary showing" standard from *Vakililan* applies to allegations **[*21]** that a warrant application contained materially false statements. *See Franks, 438 U.S. at 155-56*.

The crux of Plaintiff's argument is that Defendant Matthew Bray intentionally made false statements, or completely fabricated, the contents of the warrant affidavit, which indicated that a registered informant bought marijuana at Plaintiff's Ferndale home while Defendant Bray observed. The false information was allegedly material; without it, according to Plaintiff, there was no probable cause to search his home. *Vakilian, 335 F.3d at 517*.

The warrant to search Plaintiff's home was facially valid. *Voyticky, 412 F.3d at 677*; *Jones v. Clark Cnty., 959 F.3d 748, 756-57 (6th Cir. 2020)* (quotation removed) ("[Probable cause exists] when . . . the facts and circumstances [derived from] reasonably trustworthy information are sufficient to warrant a prudent man in believing that the [suspect] had committed . . . an offense."). Defendant Bray's request included a detailed report regarding a controlled buy of marijuana from McShane at his home. (ECF No. 57-2, PageID.769.) It stated the SOI was quickly able to purchase marijuana from Plaintiff at his home, that Defendant Bray observed the SOI entering and leaving the home, and that the purchased drugs were immediately sent to a lab for testing and verification. (*Id.*)

Thus, there is **[*22]** a presumption of probable cause. *Voyticky, 412 F.3d at 677*. To defeat Defendant Bray's qualified immunity, Plaintiff must make a "substantial showing" and demonstrate a genuine dispute of fact that

"[Defendant Bray] stated a deliberate falsehood or showed reckless disregard for the truth." *Fed. R. Civ. P. 56(a)*; *Butler, 936 F.3d at 418*; *Vakilian, 335 F.3d at 517*. Whether Plaintiff makes this initial showing is a question of law for the court. *See* *Hale v. Kart, 396 F.3d at 726-27*.

Plaintiff now points to three pieces of evidence he suggests, that when combined, make a substantial showing that Defendant Bray's search warrant application was false. First, he cites McShane's deposition testimony that he did not sell marijuana to SOI #2149 on March 19, 2014. (*See* ECF No. 89-3, PageID.3204 ("I did not have some kind of drive-through window that somebody could get marijuana and be on their way in two minutes . . . I wasn't selling marijuana to anybody that was outside my prescribed range of people that I could from the State of Michigan and the Marijuana Act. So no, it did not happen.").)

Second, Plaintiff points out that despite officer Bray's testimony that he filled out a payment voucher to compensate SOI #2149 that the Defendant City "is unable to produce any such voucher as should be kept according to its policies" **[*23]** and that Bray has not produced any surveillance notes. (ECF No. 87, PageID.3111.) He contends that "[t]he absence of these documents further support Plaintiff's allegation that Bray's affidavit was falsified." (*Id.*)

Third, Plaintiff contends that because the veracity of Bray's warrant applications in two other cases has been called into question, Bray's credibility has been impugned in the present case. (ECF No. 87, PageID.3114.) Plaintiff cites an order of dismissal from a Michigan criminal case, *People v. Lockard*, 14-010733 (Dec. 4, 2015), where a Wayne County Circuit judge suppressed a search warrant which was based on surveillance conducted by officer Bray. (ECF No. 89-4, PageID.3208-10.) *See also* *Lockard v. City of Detroit, No. 18-13045, 2021 U.S. Dist. LEXIS 164495, at *1 (E.D. Mich. Aug. 31, 2021)* (active civil lawsuit). At the state court suppression hearing, the criminal defendant presented testimony from his work supervisor indicating that the company's electronic billing/timekeeping system supported the defendant's contention—and the witness's own recollection—that the criminal defendant was in Indianapolis, Indiana, on the day Bray's affidavit attests that Bray had surveilled defendant conducting drug transactions out of his Lincoln Park home. (ECF No. 89-5, PageID.3219, 3225.) **[*24]** After considering this testimony, the state court suppressed the warrant concluding, that "I don't think that the truth was told to the Magistrate [issuing the warrant], and I don't think that the search warrant was based on the truth." (ECF No. 89-5, PageID.3241.) Additionally, Plaintiff cites a complaint filed in *McGee v. City of Detroit*, No. 20-12367, (E.D. Mich. Sept. 1, 2020), ECF No. 1, a recently initiated *Section 1983* civil case where Bray is accused of falsifying an affidavit to obtain a search warrant after he had already conducted a warrantless search. A review of the docket in *McGee* shows that discovery only began in August 2021 and no dispositive motions have yet been filed.

Defendants, in response, argue that there is documentary evidence in the factual record that corroborates Defendant Bray's sworn warrant affidavit. Defendants cite the Detroit Policy Activity Report for March 19, 2014 that indicates a control buy occurred at "1556 W. Troy" and lists a "lock seal" evidence folder number for the purchased sample sent to the lab. (*See* ECF No. 84-5, PageID.2508.) The lock seal folder number and sample weight corresponds to a preliminary lab result prepared by officer Brenda Johnson **[*25]** on March 19, 2014, at 5:30 p.m.—indicating that the sample was positive for marijuana. (ECF No. 84-6, PageID.2510.)

Reviewing the evidence presented, the court concludes

that Plaintiff has failed to present "a substantial showing that the [Defendant Bray] stated a deliberate falsehood" in his warrant application. *See* Vakilian, 335 F.3d at 517. As this court previously explained, at its core, "Plaintiff's argument proceeds with a form of the fallacy of confirmation bias." *See* Frontczak v. City of Detroit, No. 18-13781, 2020 U.S. Dist. LEXIS 97994, 2020 WL 3000576, at *5 (E.D. Mich. June 4, 2020). The court cannot logically conclude that other unresolved allegations brought against Defendant Bray regarding unrelated warrants mean that there is now "substantial" evidence that the warrant application presently at issue was falsified.[7] While such allegations against Defendant Bray, would likely impeach his credibility as a witness, at least somewhat, such unrelated allegations do little to establish evidentially that the warrant presently at issue was falsified.

"A single controlled purchase is sufficient to establish probable cause to believe that drugs are present at the purchase location." Bullock v. City of Detroit, No. 19-1287, 814 Fed. Appx. 945, 2020 U.S. App. LEXIS 15495, at *3 (6th Cir. May 14, 2020) (quoting United States v. Archibald, 685 F.3d 553, 558 (6th Cir. 2012)). After reviewing the warrant application, the court finds no internal inconsistencies and finds that it is corroborated by the narcotics **[*26]** unit's DPD activities log and the testing lab's records. And as the court previously indicated, it assigned limited if any weight to the absence of a payment voucher when discovery and document production was conducted over three years after the raid in question and occurred within a criminal case that never resulted in charges.

Further, the results of the search in this case—producing the materials sought in the warrant—lend at least some further support to the validity of the affidavit. In a criminal context, the result of a search is not proof of pre-existing probable cause, nor dispositive of the warrant's validity. "Probable cause must exist when a warrant is issued." United States v. Jeanetta, 533 F.3d 651, 655 (8th Cir. 2008). However, in a civil context as here, the results may be of some probative value as to the possible relevance or significance of an SOI's information. As the court explained in *Hunt*:

> While it may be true, from a technical standpoint, that the results of the search of Plaintiffs' premises, coming up empty as they did, do not, with legal necessity and logical compulsion, reflect back on the legal sufficiency of the Affidavit for Search Warrant, the results of the search nonetheless, as a practical matter, do give rise **[*27]** to questions regarding the viability of the factual basis of the information that was averred in the Affidavit and, in turn, to concerns about which the deposition testimony of the CI could prove useful. In this regard, Defendants would seem to want this Court to dismiss the significance of the fact that the raid came up empty handed. Certainly, it is fair to suggest that had the raid produced different results (e.g., cocaine, crack and related tools of the trade) it is unlikely that Plaintiffs would be bringing the instant action.

Hunt, 2012 U.S. Dist. LEXIS 10097, 2012 WL 262609, at *10.

Here, the search of Plaintiff's residence produced the contraband predicted by the warrant affidavit. As explained by the court in *Hunt*, the success of the search lends at least some further support to the factual

[7] Nor can the court logically conclude that the conviction of three members of a seventy-to-eighty officer narcotics unit for falsifying affidavits, among other offenses, leads inevitably to the conclusion that all other warrants sought by DPD's narcotics unit as a whole are also fraudulent, as Plaintiff seems to contend.

basis of the warrant. *In toto*, the court finds that Plaintiff has failed to make the required "substantial showing" of evidence indicating that Bray presented false information in the search warrant application. Therefore, Bray is entitled to qualified immunity.

**ii. Officers Tourville, Beasley, Barnett, Matelic, and Sgt. Geelhood**

It is undisputed that Defendants Tourville, Beasley, Barnet, and Matelic executed a facially-valid and judicially authorized **[*28]** warrant when they searched the Plaintiff's home in March 2014. (ECF No. 87, PageID.3091.) It is also undisputed that Defendant officers Tourville, Beasley, Barnett, Matelic, and Sgt. Geelhood did not participate in obtaining the warrant, which was done by Defendant Bray alone. (*Id.*, PageID.3092.) The parties disagree, however, on whether the executing officers can still be held liable for the allegedly fraudulent search warrant application despite not participating in the warrant's preparation.

Plaintiff cites *McCallum v. Geelhood, 742 Fed. Appx 985 (6th Cir. 2018)*, in support of the proposition that officers executing a warrant should be denied qualified immunity "where there was a question of fact as to whether [the executing officers] acted with requisite knowledge and intent to share liability for the execution of an invalid search warrant." (ECF No. 87, PageID.3116.)

But the officers assert that they are entitled to qualified immunity because they were permitted to reasonably rely on a judicially-authorized search warrant. *See Hale, 396 F.3d at 725* ("In *§ 1983* actions, an officer ordinarily received qualified immunity if he or she relies on a judicially secured warrant," so long as the warrant was not "so lacking in the indicia of probable cause" that reliance **[*29]** on the warrant would be unreasonable.).

First, this dispute is moot in light of the court's ruling that Defendant Bray must be granted summary judgment on Plaintiff's warrant falsification allegation. If Plaintiff has failed to show there is a genuine dispute regarding the warrant's validity, he cannot succeed in his claim that executing officers are not entitled to qualified immunity for relying on it. *See id.*

Even if, *arguendo*, Plaintiff had been able to demonstrate with a substantial showing that a genuine factual dispute exists as to the warrant's validity, Plaintiff has failed to present any material evidence demonstrating that the officers *knew* the warrant was based on false information. The *Geelhood* case cited by Plaintiff—which involves both Defendants Geelhood and Matelic—is factually distinguishable from the present case. A recent decision in *Reid v. City of Detroit*, another spin-off case from the failed *Davis* class action addressed the same argument that Plaintiff now raises.

> In *McCallum*, a search warrant was obtained and executed at the plaintiff's property. The plaintiff filed a *§ 1983* action alleging, among other things, that Officer Matelic submitted an affidavit in support of **[*30]** the search warrant that contained false and misleading statements, and that Matelic made those statements deliberately or with reckless disregard for the truth. Notably, Matelic admitted "that she never actually received information from the informant described in her affidavit and never even knew the informant's identity." *742 Fed. Appx. at 987*. Matelic stated that Officer "Geelhood provided her with all of the information related to the confidential informant." *Id.* The district court denied qualified immunity to both Matelic and Geelhood, and found that the following disputed issue would proceed to trial: "Whether Geelhood, in his review of Matelic's submission of the search warrant affidavit, acted with the requisite knowledge and intent to share liability for the execution of the

> invalid search warrant." *Id. at 989*. The Sixth Circuit affirmed the district court's denial of qualified immunity.
>
> Unlike the situation presented in *McCallum*, the only allegation, and the only evidence presented to the Court, is that Leavells alone obtained the search warrant at issue in this case and that he drafted and signed the supporting search warrant affidavit. Plaintiff has not presented any evidence that could create a genuine **[*31]** issue of fact as to whether any of these four officers . . . had any involvement in procuring the search warrant.

*Reid v. City of Detroit, 18-cv-13681, 2020 U.S. Dist. LEXIS 225659, 2020 WL 7056030, at *9, *10 (E.D. Mich. Dec. 2, 2020)*. Like *Reid*, Plaintiff in this action has presented no material evidence that the five other Defendants conducting the raid had knowledge of the search warrant's alleged falsity. Plaintiff has presented mere speculation to support his claims, based on unproven allegations raised against officers in other civil actions, and the actions of other non-party DPD officers. Plaintiff has provided no evidence about the officer's knowledge in *this* case. Therefore, officers Tourville, Beasley, Barnett, Matelic, and Sgt. Geelhood will also be granted qualified immunity as to the wrongful search claim.

**D. *Fourth Amendment* Wrongful Seizure Claim**

Plaintiff argues that "the record also supports Plaintiff's claim that he was unlawfully seized within the meaning of the *Fourth Amendment*."[8] (ECF No. 87, PageID.3126.) "The *Fourth Amendment* protects against unreasonable seizures, including seizures that involve only a brief detention short of traditional arrest." *Al-Lamadani v. Lang, 624 F. App'x 405, 410 (6th Cir. 2015)* (quotation marks and citation omitted). So, Plaintiff is correct that McShane was technically "seized" during the raid. However, "the Supreme Court [has] found that a limited intrusion **[*32]** [on a person's liberty] was reasonable when the police temporarily restrained a person, absent probable cause while conducting a search in that person's home pursuant to a validly executed search warrant." *Harris v. Langley, 647 F. App'x 585, 592 (6th Cir. 2016)* (citing *Michigan v. Summers, 452 U.S. 692, 700, 101 S. Ct. 2587, 69 L. Ed. 2d 340 (1981)*). As a result, it is clear Defendants acted appropriately under *Summers* when they briefly detained Plaintiff. Furthermore, the large quantity of marijuana plants and processed materials readily apparent in the house during the search also independently established probable cause supporting at least a short detention as occurred here. To the extent

[8] Plaintiff argues, in the alternative, that Defendants' alleged failure to "knock and announce" when executing the warrant also constituted a constitutional violation. (ECF No. 87, PageID.3125.) While McShane claims he heard no such announcement, he also testified that he was in "a corner bathroom in the basement" when the raid began and that he suddenly heard a "large amount of noise" and then "pounding and . . . a lot of yelling." (ECF No. 85-3, PageID.2652.) By the time he emerged from the bathroom, the officers were standing at the top of the basement stairs. (*Id.*) Even construing all inferences in favor of Plaintiff, however, there is no genuine conflict between McShane's testimony and the officers' testimony that they announced themselves. The assumed fact that McShane did not hear officers yelling an announcement, understandable given his location in the home at the time, does not equate to the absence of an announcement. *See also* *Pierce v. Burkart, No. 03-74250, 2005 U.S. Dist. LEXIS 44395, 2005 WL 1862416, at *5 (E.D. Mich. Aug. 4, 2005)* (Edmunds, J.) ("Testimony by occupants of the home that they did not hear the police knock and announce does not give rise to a reasonable inference that the police failed to do so and thus is insufficient to defeat summary judgment.").

that Plaintiff alleges excessive force was used to effectuate such a detainment, that claim is barred by the statute of limitations. *See, supra*, Section III.A.

**E. Municipal Liability — *Monell* Claim**

Plaintiffs argue that Defendant City of Detroit is liable under *Monell* because "(1) officials with final decision-making authority ratified the illegal actions [of Defendant officers]; and (2) the City failed to adequately supervise its officers; and (3) the existence of a custom . . . or acquiesces to federal rights violations." (ECF No. 88, PageID.3150.)

*Monell* liability may arise "when execution of a government's policy **[*33]** or custom, whether made by lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts [ ] injury." *Monell v. Dep't of Soc. Servs. of N.Y., 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978)*. *Monell* claims provide an avenue for municipal liability for claims brought under *§ 1983*. But "[t]here can be no liability under *Monell* without an underlying constitutional violation." *Robertson v. Lucas, 753 F.3d 606, 622 (6th Cir. 2014)* (citing *Scott v. Clay Cnty., 205 F.3d 867, 879 (6th Cir. 2000)*).

Here, the court has now granted summary judgment to Defendants on all the alleged federal constitutional violations allegedly committed by city employees. "Without a constitutional violation, there can be no *Monell* claim as to the alleged [] claim." *See Ratcliff v. City of Detroit, No. 19-cv-13458, 2021 U.S. Dist. LEXIS 133736, 2021 WL 3032537, at *5 (E.D. Mich. July 19, 2021)* (Murphy, J.). The court will therefore also grant summary judgment to the City of Detroit on Plaintiff's *Monell* claim. *See id.*

**IV. CONCLUSION**

Plaintiff has failed to show that a genuine dispute of material fact exists as to whether his constitutional rights were violated when Defendant Detroit Police officers executed a search warrant on his home in March 2014. As a result, summary judgment will be awarded to the Defendants on all claims. Accordingly,

IT IS ORDERED that Defendant Officers' Motion for Summary Judgment (ECF No. 84) is GRANTED.

IT IS ORDERED that Defendant City of Detroit's Motion for Summary Judgment **[*34]** (ECF No. 85) is GRANTED.

IT IS ORDERED that Defendants' joint Motion for Summary Judgment (ECF No. 110) is GRANTED.

Inasmuch as all claims have not been resolved, the court will issue a separate judgment in favor of Defendants.

/s/ Robert H. Cleland

ROBERT H. CLELAND

UNITED STATES DISTRICT JUDGE

Dated: September 28, 2021

**JUDGMENT**

In accordance with the court's Opinion and Order dated September 28, 2021,

IT IS ORDERED AND ADJUDGED that judgment is entered in favor of Defendants City of Detroit, Stephen Geelhood, Matthew Bray, Reginald Beasley, Larry Barnett, Amy Matelic, Gregory Tourville and against Plaintiff Nick Frontczak as Public Administrator of the Estate of Michael McShane. Dated at Port Huron, Michigan this 28th day of September, 2021.

Dated: September 28, 2021

End of Document