UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BERNICE O'BRYANT,

      Plaintiff,

  v.

CITY OF DETROIT and
LAMAR WILLIAMS,

      Defendant.

_____/

Case No. 21-10321

Hon. George Caram Steeh

OPINON AND ORDER DENYING LAMAR WILLIAMS'S
MOTION FOR SUMMARY JUDGMENT (ECF NO. 41) AND
GRANTING THE CITY OF DETROIT'S MOTION (ECF NO. 40)

Defendants Lamar Williams and the City of Detroit seek summary judgment on Plaintiff Bernice O'Bryant's civil rights claims. O'Bryant alleges that Williams, a former police officer, swore to a false affidavit in order to obtain a search warrant for her home. Because the court finds that a genuine issue of material fact exists regarding her Fourth Amendment claim, Williams's motion is denied. However, the court will grant the City's motion because Plaintiff has failed to establish a genuine issue of fact regarding municipal liability.

## BACKGROUND FACTS

On February 18, 2018, Detroit Police Officer Lamar Williams obtained a warrant to search the premises at 12695 Coyle in Detroit, among other locations. The target of the investigation was Thearthur Williams ("Thearthur"). In support of the warrant request, Williams submitted an affidavit stating that he had received information from an unregistered confidential informant that Thearthur was dealing cocaine and heroin. ECF No. 42-1. He stated that he had "received information from the confidential informant on ten prior occasion[s] which resulted in multiple arrests. . . . Affiant believes the information is credible and reliable." *Id.* Williams averred that based upon the informant's tip, he arranged a controlled buy and purchased 29.5 grams of cocaine from Thearthur. *Id.* Williams also stated that he conducted surveillance of Thearthur, which led him to believe that drugs were being sold or stored at 12695 Coyle, among other locations.

The home at 12695 Coyle belonged to Plaintiff, Bernice O'Bryant. The search warrant for the Coyle premises was executed on February 19, 2018. Drugs and other contraband were found there, leading to the arrest of O'Bryant, Thearthur, and Theo Thompson.

A preliminary examination was conducted by 36th District Court Judge William C. McConico over several days. Williams testified that the unregistered confidential informant referred to in the search warrant affidavit was known as "Cherry," and that he had used her as a source to obtain ten other warrants, although he could not remember the circumstances surrounding them. According to Williams, Cherry arranged and was present for the controlled buy with Thearthur. Williams testified that he would contact Cherry using the phone number (248) xxx-7795, and that they arranged the controlled buy in a three-way call with Thearthur.

The defense pressed for more information about Cherry, including documentation regarding her use as an informant and her address. According to Plaintiff, Williams was unable to produce any documentation – such as text messages, notes, emails, activity logs, or photos – showing that Cherry was a real person. None of the other officers at the undercover scene actually saw the narcotics transaction, Thearthur, or Cherry.

On October 18, 2018, Judge McConico held a *Franks* hearing to determine whether Williams lied in his affidavit about Cherry and the controlled buy with Thearthur. *See Franks v. Delaware*, 438 U.S. 154 (1978). Williams claimed that he investigated further and determined that

Cherry's real name was Shavelle M. Runels.[1] Judge McConico interviewed Runels *in camera.* She denied ever working as a confidential informant or that she knew Officer Williams. ECF No. 43-9 at PageID 1578-80. She stated that she did not know Thearthur, Bernice O'Bryant, or Theo Thompson and was never involved in a controlled drug buy for the Detroit Police Department. *Id.*

Judge McConico found Runels to be credible and stated that the "Court does not believe the testimony of Officer Williams." *Id.* He determined that Williams intentionally provided false information in the search warrant affidavit. Judge McConico issued an opinion suppressing the evidence seized pursuant to the search warrants and dismissing the charges against O'Bryant and the other defendants. ECF No. 1-3.

Thearthur lodged a complaint against Williams with the Detroit Police Department's office of Internal Affairs ("IA"). *See* ECF No. 43-5 (IA report). He provided his phone records to IA; neither Williams's work phone nor Cherry's phone number appeared in those records. IA officers also interviewed Runels, who denied knowledge of narcotics activity, Officer Williams, or Thearthur. IA obtained phone records for Williams, Thearthur,

---

[1] Runels was convicted of murder and is currently in custody with the Michigan Department of Corrections.

-4-

and Cherry from their mobile phone providers. They found no contact between the Williams' work phone and Cherry or Thearthur.

The phone number that Williams attributed to Cherry actually belonged to a drug dealer whom Williams previously investigated, known as "New York" (Jean-Pierre Mamby). Mamby, who had once dated Runels, told IA officers that he and Runels sold drugs to Williams at the place of the alleged controlled buy with Cherry and Thearthur. According to Mamby, Runels did not know that Williams was a police officer at the time of the deal. Thearthur's phone records, based upon cell tower information, showed that he was not near the controlled-buy location on the date in question. The IA investigation concluded that Williams falsified the search warrant affidavit and provided false testimony in court.

Williams resigned from the DPD on October 21, 2020. On November 5, 2020, the DPD prepared a warrant request for Williams's arrest for perjury. At this time, however, Williams has not been charged.

O'Bryant filed this action against the City of Detroit and Williams, alleging that he violated her Fourth Amendment rights by falsifying the search warrant affidavit that led to the search of her home and her arrest. Defendants have moved for summary judgment.

## LAW AND ANALYSIS

I.     Standard of Review

Summary judgment is appropriate if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing a motion for summary judgment, the court must determine "'whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Amway Dist. Benefits Ass'n v. Northfield Ins. Co.*, 323 F.3d 386, 390 (6th Cir. 2003) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The facts and any reasonable inferences drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In response to a properly supported motion for summary judgment, the opposing party must come forward with specific evidence showing there is a genuine issue of fact for trial. A "mere scintilla" of evidence is insufficient to meet this burden; the evidence must be such that a reasonable jury could find in favor of the nonmoving party. *Anderson*, 477 U.S. at 252.

II.     Fourth Amendment Claim

Plaintiff asserts a Fourth Amendment claim pursuant to 42 U.S.C. § 1983. Williams argues that he is entitled to qualified immunity, which shields officials from civil liability if their conduct "does not violate clearly established rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). In determining whether a defendant is entitled to qualified immunity, the court analyzes "(1) whether, considering the allegations in the light most favorable to the party injured, a constitutional right has been violated, and (2) whether that right was clearly established." *Richmond v. Huq*, 885 F.3d 928, 947 (6th Cir. 2018) (citation omitted). Williams's argument here focuses on whether O'Bryant's Fourth Amendment rights were violated, rather than whether those rights were clearly established.

The Fourth Amendment guarantees the right to be free from unreasonable searches and seizures, and requires search warrants to be supported by probable cause. U.S. Const. amend. IV. "[P]robable cause exists when an affidavit shows a 'fair probability' that criminal evidence will be found in the place to be searched." *United States v. Moore*, 999 F.3d 993, 996 (6th Cir. 2021).

In a civil rights case, an officer is entitled to rely on a judicially obtained search warrant as "satisfactory evidence of probable cause." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). However, an officer "cannot rely on a judicial determination of probable cause if that officer knowingly makes false statements and omissions to the judge such that but for these falsities the judge would not have issued the warrant." *Id.* (citation omitted).

Plaintiff alleges that Williams provided false information in the search warrant affidavit. In this context, "to overcome an officer's entitlement to qualified immunity," a plaintiff must make "a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth." *Vakilian*, 335 F.3d at 517. The plaintiff must also show "that the allegedly false or omitted information was material to the finding of probable cause." *Id. See also Butler v. City of Detroit*, 936 F.3d 410, 418 (6th Cir. 2019). "A plaintiff shows substantial evidence of deliberate falsehood or reckless disregard when, for example, he presents proof that at the time the officer swore out the affidavit, she knew of or possessed information that contradicted the sworn assertions." *Butler*, 936 F.3d at 419. "[S]uch a showing gets the § 1983 plaintiff past the qualified-immunity

hurdle because it shows that no reasonable officer with access to the contradictory information would have sworn out such an affidavit." *Id.*

The Sixth Circuit has explained that "[i]mplicit in *Vakilian*'s demanding standard is the recognition that a police officer swearing out an affidavit can make mistakes and yet remain protected by qualified immunity. To overcome this immunity, a plaintiff must present 'substantial' evidence to show a more culpable mental state." *Butler*, 936 F.3d at 418.

Williams argues that Plaintiff cannot demonstrate that there is a triable issue regarding whether he provided false information in the affidavit and whether he acted deliberately or recklessly. In this regard, Williams does not specifically challenge the facts as presented by Plaintiff, but argues that she does not have admissible evidence supporting her case. He contends that Judge McConico's opinion, the IA report, and witness statements are hearsay and inadmissible. However, as the Sixth Circuit has explained,

> The submissions by a party opposing a motion for summary judgment need not themselves be in a form that is admissible at trial. Otherwise, affidavits themselves, albeit made on personal knowledge of the affiant, may not suffice, since they are out-of-court statements and might not be admissible at trial. However, the party opposing summary judgment must show that she *can* make good on the promise of the pleadings by laying out enough evidence that will be admissible at trial to demonstrate that

> a genuine issue on a material fact exists, and that a trial is necessary.

*Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).[2]

Even without the evidence that Williams challenges, Plaintiff has made a substantial showing that Williams deliberately included false information in the search warrant affidavit. For example, at trial, she may choose to call Runels to testify that she is not Cherry, that she never worked with Williams as an informant, and she does not know Williams or Thearthur. Although Williams argues that Runels is not credible, such an assessment is for the jury. Based upon Runels's expected testimony, reasonable jury could conclude that Williams fabricated Cherry. Since Williams testified that Cherry arranged and was present for the controlled buy, a reasonable jury could also conclude that the controlled buy did not occur as he described in the affidavit. Without Cherry's tip and the controlled buy, the search warrant affidavit is insufficient to demonstrate probable cause.

---

[2] Because the admissibility of these documents does not affect the court's analysis in this particular case, it will not rule on their admissibility at this time. Such an inquiry is more appropriate for a motion in limine or an evidentiary ruling in the context of the evidence as it is presented a trial.

Rather than testify at his deposition, Williams invoked his Fifth Amendment privilege against self-incrimination more than one hundred times. He refused to answer questions about Cherry, Thearthur, and the controlled buy, among others. A negative inference may be drawn from his silence, as "the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Baxter v. Palmigiano*, 425 U.S. 308, 318 (1976); *see also Hoxie v. Drug Enforcement Admin.*, 419 F.3d 477, 483 (6th Cir. 2005). Plaintiff is entitled to the benefit of this adverse inference, which provides additional support to her claim that Williams intentionally provided false information in the search warrant affidavit.

Williams argues that even if the information related to Cherry was excised from the affidavit, the controlled buy actually occurred and provided sufficient probable cause. Because Cherry allegedly facilitated and was present at the controlled buy, however, the information regarding the controlled buy cannot stand if Cherry was a fabrication. Williams does not argue that the affidavit is sufficient if both Cherry and the controlled buy are excised. Without this challenged information, the affidavit reports only Thearthur's comings and goings at certain locations, which is insufficient to demonstrate probable cause that criminal activity was afoot.

-11-

Plaintiff has made a substantial showing that Williams deliberately presented false information in the search warrant affidavit that was material to a finding of probable cause. Accordingly, Williams is not entitled to qualified immunity on Plaintiff's Fourth Amendment claim.

Williams contends that even if the affidavit was insufficient, partial summary judgment should be granted in his favor because he did not proximately cause Plaintiff to be arrested, charged, or detained. Williams argues that although his search warrant caused Plaintiff's home to be searched, she was arrested because of the drugs and other contraband found there. Williams suggests that this evidence provided probable cause for the search. And, according to Williams, if "Plaintiff had not been engaged in illegal activity, she would not have been arrested, charged, and detained." ECF No. 41 at PageID 822.

Perhaps unsurprisingly, Williams cites no authority for the proposition that evidence discovered while executing an invalid search warrant may be used to establish probable cause. *See generally Franks v. Delaware*, 438 U.S. 154, 156 (1978) (when false content is removed, and "the affidavit's remaining content is insufficient to establish probable cause, the search warrant must be voided *and the fruits of the search excluded*"). Likewise, under these facts, there is no basis for the argument that Williams did not

"cause" Plaintiff's arrest.[3] "Causation in the constitutional sense is no different from causation in the common law sense. Indeed, '[s]ection [1983] should be read against the background of tort liability that makes a man responsible for the natural consequences of his actions.'" *McKinley v. City of Mansfield*, 404 F.3d 418, 438 (6th Cir. 2005) (citation omitted); *see also Malley v. Briggs*, 475 U.S. 335, 345 n. 7 (1986) (noting that the lower court's "'no causation' rationale in this case is inconsistent with our interpretation of § 1983"). Without Williams's allegedly false search warrant affidavit, the warrant would not have been issued, Plaintiff's home would not have been searched, and she would not have been arrested. The evidence discovered in Plaintiff's home, pursuant to an invalid search warrant based upon intentionally false information, does not disrupt the proximate cause between Williams's actions and her injury.

For these reasons, the court will deny Williams's motion for summary judgment.

III. <u>Municipal Liability Claim</u>

Plaintiff has also alleged liability on the part of the City of Detroit, based upon a failure to train theory. In order to establish municipal liability

---

[3] Williams relies on *Arnold v. Int'l Bus. Machines Corp.*, 637 F.2d 1350, 1358 (9th Cir. 1981), which addressed whether a *private party* proximately caused a search and arrest. *Arnold* is inapposite to the factual scenario alleged here.

under § 1983, a plaintiff must point to a municipal policy or custom that directly caused the constitutional violation. *See Monell v. Dept. of Social Servs. of the City of New York*, 436 U.S. 658, 690 (1978); *Hardrick v. City of Detroit, Michigan*, 876 F.3d 238, 243 (6th Cir. 2017). One way a plaintiff may show a municipal policy or custom is to demonstrate a policy of inadequate training. *See Baynes v. Cleland*, 799 F.3d 600, 621 (6th Cir. 2015). "To succeed on a failure to train or supervise claim, the plaintiff must prove the following: (1) the training or supervision was inadequate for the tasks performed; (2) the inadequacy was the result of the municipality's deliberate indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis ex rel. Pendergrass v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006).

To demonstrate deliberate indifference in this context, Plaintiff may show that the City failed to act in response to repeated complaints of constitutional violations by its officials. *Ellis*, 455 F.3d at 700-701; *see also Connick v. Thompson*, 563 U.S. 51, 62 (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train."). "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training

program that will cause violations of constitutional rights." *Connick*, 563 U.S. at 62.

Plaintiff has not alleged a pattern of constitutional violations here. In the absence of a pattern of violations, Plaintiff may show that "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Miller v. Calhoun Cty.*, 408 F.3d 803, 816-17 (6th Cir. 2005) (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). The Supreme Court has envisioned the possibility that in such "rare" circumstances, "the unconstitutional consequences of failing to train could be so patently obvious that a city could be liable under § 1983 without proof of a pre-existing pattern of violations." *Connick*, 563 U.S. at 64. As a hypothetical, the Court provided the example of a municipality that neglects to train officers in the use of deadly force. "[I]n the absence of training, there is no way for novice officers to obtain the legal knowledge they require. Under those circumstances there is an obvious need for some form of training." *Id.*

Plaintiff argues that Williams received no training on the use of confidential informants or recordkeeping. Assuming that is true, it is not

-15-

"obvious" that this lack of training would lead to constitutional violations, let alone the violation alleged here: that Williams falsified information in the search warrant affidavit. This violation is not the result of the improper use of confidential informants or recordkeeping, but the result of Williams's fabrication of evidence supporting probable cause. Under the circumstances, it cannot be concluded that the City was deliberately indifferent to the need for training regarding confidential informants, or that the inadequate training caused Plaintiff's injury.

## ORDER

Accordingly, IT IS HEREBY ORDERED that the City's motion for summary judgment (ECF No. 40) is GRANTED and Williams's motion for summary judgment (ECF No. 41) is DENIED.

Dated: October 7, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on October 7, 2022, by electronic and/or ordinary mail.

s/Brianna Sauve
Deputy Clerk

---